The first case that will be argued fully is Swallows Holding v. Commissioner of Internal Revenue, No. 06-3388. And I understand that instead of Mr. Parks we have Mr. Rothenberg, is that correct? And Mr. Jelsma. Mr. Rothenberg. Thank you and may it please the court. I'm Gilbert Rothenberg representing the Commissioner of Internal Revenue and I would like to reserve three minutes of my time for rebuttal. It's granted. It's not often that an obscure income tax provision generates a fundamental question of administrative law, but this is just the case. At bottom this is a clash as to who gets to make the call when Congress hasn't spoken one way or the other to the precise issue before here. And the judicial branch and the executive branch have reached differing conclusions. The Supreme Court, we think, has clearly identified who is to be the referee, the man in the booth, so to speak, in football parlance. And that is the executive department through the issuance of regulations with notice in Congress. So what you're saying is 882 the statute doesn't have a time provision in it. The regulation does? The regulation does. The statute just uses the word, uses two important considerations. It says the word manner and then it says subtitle F. Subtitle F. The Internal Revenue Code, when it wants to say time and manner, certainly in other provisions of the code can do so. It has done so. It has done so and it has also not done so. The Congress often says time and manner. Sometimes it says, it just says manner. And regulations have been issued and courts have upheld them that in that instance, a regulation that sets forth a drop dead date or a terminal date, as courts have used in this scenario, is enforceable. The important part in this case is that if you interpret manner as not including time at all, then as one of the dissenting opinions here said, then you might have until the end of time to file your tax return. Although in this case, you had precious few dissenting opinions compared to the people who were in the majority. I don't like to count. I don't like to make a count. We had three dissenting opinions and we believe actually each of them does give the correct analysis. This is not the first time the majority tax court has issued an opinion, followed its own judicial precedence, and then had it reversed on appeal. And it had it reversed on appeal because of the regulation rule. Who gets to make the call? In the earlier cases, this is Red Lark and people's finance or people's life that's in our brief. This particular provision was first enacted. The regulation went. Look, isn't it going to be more helpful to us before we talk about the merits if we decide whether Chevron is the test we should apply or if we decide whether National Muffler is the test that we apply? Because won't that have some influence, not that I don't respect the questions of my learned colleague, but in asking those questions, don't we first have to establish the framework that we're working in? Well, A, I think you do. To answer Judge Ambrose, it was 1990 when the reg gave the time. I was going back, but the question on this one, you argue, just to add on to Judge Ross' question, that National Muffler in effect was overturned by Chevron. How do you make that argument? It's been cited in the Cleveland Indians baseball case in 2001, which is post-Chevron. Well, the Supreme Court, post-Chevron, post-National Muffler, United States v. Boyle, just cited Chevron as the operative provision. Chevron, Brand X, and the most recent Supreme Court pronouncement, which is the Long Island Care at Home case that we 28-J'd the court, all three follow the analysis of Chevron. The National Muffler analysis generally follows Chevron and then says basically our holding is reinforced by these other five or six factors. And it points to those, several of those factors the Supreme Court has said do not matter. Does Brand X make any significant change in the law? Does it alter the Chevron standard in some way? I think Brand X clarifies that what the Supreme Court said in Chevron really is right because lower courts, even post-Chevron, kind of backed away from it and said, well, we've issued a judicial holding that said X and the commissioner or whatever the regulatory authority cannot issue a rule that says Y. So it emphasizes, if I'm hearing you right, Brand X emphasizes the weight to be given to Chevron in reviewing administrative decisions? Brand X says, Chevron says what it says. And if there's a disagreement with an ambiguous statute, the reg controls, not prior judicial precedence. And does that have any impact, going to Judge Roth's question, on the standard we're supposed to be applying here? Does that have any import for the applicability of national muffler? Yes, I think national muffler, several of the considerations the Supreme Court used in national muffler are no longer controlling in light of the later Supreme Court precedence. So what's left of national muffler? I mean, are we in a posture here where, given Brand X, we should be saying, look, it's Chevron, and we don't have to worry about national muffler? Yes, yes, that is exactly our position. It is Chevron. This court has issued several opinions and kind of reserved the issue on whether Chevron controls or national muffler. Lots of tax lawyers. But our court still considers national muffler to be valid. The Connecticut general life insurance case in 1999, we did. We did that. The Tate and Lyle case in 1996, we did. And in Cleary v. Waldman, the court cited Chevron, and that was a 19- But that doesn't address the point. Does Chevron take away any validity of national muffler, or is national muffler still a way to go, an analytical method of analyzing this issue? No, no, no. It is Chevron. It is Brand X. Where has the Supreme Court said that national muffler is no longer good law? Because the Supreme Court in some of the later cases, like one of the arguments that one of the positions national muffler took was, for instance, consistency of agency position. That's no longer valid under Chevron and Brand X. Another one was whether the agency has changed, how long the rule has been in effect. The Supreme Court said it doesn't matter. One of the rules, one of the regs at issue in one of those three Supreme Court cases was issued 100 years after the statute was passed. The Supreme Court said that does not matter. Why would the Supreme Court continue to cite a case if, in fact, it has overruled that case? Well, it has only overruled parts of that case. In many instances, Your Honor, it does not matter whether you apply national muffler or Chevron. It doesn't matter. This is one of the rare cases where it does matter. And so it's important to realize that not all of those six factors the court cited in national muffler is, in fact, the law anymore. It is simply not the law anymore. And the lower courts were having trouble with that post-Chevron. That's why the Supreme Court issued its pronouncements in Brand X. You're saying, based on what I just heard you, you cannot harmonize national muffler with Chevron? No, I think you can't. This is the way I think you can harmonize. National muffler points out that generally when it's an ambiguous statute, regs issued with notice and comment control. And then it said in that paragraph that everybody refers to, our decision is reinforced by, and it gives you those five factors. Those reinforcing factors, some of those are no longer valid. Now, in most instances where the courts cite both, it doesn't matter. But it does matter, and we think it's important to clarify the law, that Chevron is it when it comes to administrative rules, not just in the tax area but in other areas. And where the courts were having trouble is why you had Brand X. It's why the Supreme Court took the Long Island Care at Home case. It still had the same problem. You had the Ninth Circuit saying, well, you know, we issued an opinion saying modems are telecommunications devices. And the Supreme Court took the case and said, I'm sorry, but your prior judicial precedent doesn't matter. And that's why the tax court – So the question, looking at life from 10,000 feet, the question here is what degree of deference do we give the commissioner with respect to a regulation that is, in your view, filling in the gaps with respect to a statute. Is that correct? That is correct. And you're suggesting that the degree of deference is what? The degree of deference is that it is controlling so long as it is reasonable. And you have several different types of – the Supreme Court has said, well, if it's an explicit delegation of authority – If you look at the tax court here, they're looking at it and saying, if you accept Chevron, solely Chevron, that you've got, in their view, in the view of the majority, a statute that is unambiguous. Isn't that what they said? That's what they say. And your argument is that it is ambiguous because? Well, my argument is that that holding by the tax court majority is wrong. It is ambiguous because there is no way the word manner by itself gives the answer to that. It simply doesn't. It says the manner under subtitle F. And subtitle F of the code is like yay thick. It gives the form. It gives the time. It's all the procedural requirements of the code. So if the tax court majority basically said, there is no time limit under the words of the statute, and that's simple. That is not right. That is wrong. And that's why the minority, the dissenting opinions in the tax court, got this exactly right. The tax court says basically the judge in the tax court said, look, we are best suited to determine what an ambiguous statute says. And the Supreme Court has said, judges, that's not your role. If it's ambiguous, then you look to see, is there a regulation that clears up the ambiguity? So long as that regulation is reasonable, that's the end. That's the man upstairs in the booth. That's it. That is the rule. And that's exactly what we have in this case. We have a situation where the Treasury came in and said, you know, we're not issuing a rule that says you must file your foreign corporation, must file a return as of the exact due date. The on-time date is one of the dissenting opinions referred to. There's an 18-month period. And in addition to that, under the regs, the foreign corporation has the right to seek a waiver even if it files its return after the 18 months. This is certainly a very reasonable approach to the difficulty IRS has in finding out about foreign corporations and in trying to figure out do they do business in this country, how much income they earned, and so forth. Taking us back to where we started, this regulation comes out in 1990. What kind of – this is an interpretive regulation, correct? Well, the better terminology is this is a general authority reg. There are specific authority regs, general authority regs, and then something which may be considered an interpretive reg. Both of these regs were issued with notice and comment and formal rulemaking. How much notice and comment was there here? The rule was proposed in sometime, I think, 1989, and many comments were received. The Treasury decision which announced the rule points out the comments, which ones they adopt and which ones they do not adopt. The commissioner's explanation of the regulation was not detailed. They have a preamble when they issue final regs, and this is 1992, a cumulative bulletin. I forgot the page, maybe 240. I forgot the page number. But it specifically says we have received comments that said there should not be a terminal date. We reject that because we believe there needs to be a terminal date, and that's when it adopts the 18-month rule. What was the rationale for the 18-month rule? The rationale was that it's very difficult to find foreign corporations and nonresident aliens to know whether they've earned any income, and they need to have a date by which if you do not file a return, you lose deductions. I mean, this rule – But why the 18 months? What was the explanation for why the 18 months as opposed to 24 as opposed to 12 as opposed to 30? Well, the explanation was simply this is a reasonable time. I mean, the whole point of regulations is to issue safe harbors, to make line drawing. The tax court majority opinion says we do not know where this number comes from. That doesn't matter. The Treasury Department, in its administrative rulings, makes a call, basically making a call. We need this by a certain date, and this is the date. And that's the whole point of issuing regulations under our system of government. You make safe harbors. You basically establish rules. And if those rules are reasonable, and they clearly are here, those rules control. Can you point back to Judge Ross' question when she started on the degree of deference and what standards we apply here? In light of the way matters were handled by the commissioner, wouldn't we also take a look at Meade in addition to Long Island Care? And perhaps isn't there somewhat less of a deference afforded the commissioner than you might argue for under Chevron? Well, I don't think so. Meade was an important case because the question was how much deference do you give to basically 10,000 tariff rulings issued by 56 different offices? And the Supreme Court said, now, wait a minute. We give controlling weight to certain types of regulations, and these tariff rulings really don't fit within that. Well, what Meade did is it went back and resurrected a case called Skidmore. And it basically is you're entitled to the deference to the extent it's persuasive. If the particular ruling's under review, you have to identify what type of a ruling is it. The type of ruling we have here is not a Skidmore ruling. This is a full notice and comment Treasury regulation. That is entitled to full Chevron deference, not Skidmore deference. The only question of Skidmore deference would be, you know, the Internal Revenue Service issues lots of notices during the year, lots of which do not undertake formal rulemaking. And Skidmore deference might be appropriate to an IRS notice, for instance, things like that, but not to formal rulemaking. Formal rulemaking is entitled to full Chevron deference. This is full notice and comment, but is it absolutely necessary to give deference if there have been notice and comment? Aren't there some regulations that deserve deference that did not have notice and comment? Well, the Supreme Court, in me, pointed out that notice and comment is like the best indicator, but we're not holding that in the absence of notice and comment, you cannot have Chevron deference. So if I agree with you and write an opinion, I should not say this is valid because there was notice and comment? That is just a consideration. Well, if there is notice and comment, you know it's formal rulemaking entitled to Chevron. What I'm saying is that if you do not have notice and comment, you have to go a step further. But here, all Treasury regulations today, either general authority or specific authority, are issued with notice and comment, formal rulemaking. If the national muffler is still in play, how would you go through the analysis of the six items noted under national muffler? First is harmony with the plain language. Well, harmony with the plain language. If the statute is unambiguous and can have only one result, then you don't even look at the rates. That's the so-called step one Chevron. That's still fully applicable here. And I don't have the listing. No, I'll give them to you. Harmony with the plain language of the statute, its origin, and its purpose. The regulation in harmony with the statute. You would have to have that. The regulation has to be in harmony with the statute. Is it here? Yes, it is. Because the statute says, in the manner delineated under subtitle F. Subtitle F has a timing requirement. So how can you say manner? And the various opinions of the tax court point out that time, the word manner can include time, and several statutes are cited in the dissenting opinion of Judge Holmes. They're saying, look, this does have a timing requirement. And even the tax court itself, in its prior judicial precedence, recognized that there must be a cutoff date. And the judicial opinion simply said the cutoff date was when the commissioner files a return for the taxpayer. That's general. I mean, you see the line of cases that people cite for, including a Fourth Circuit case, I guess it was at Ardburn? Yeah, one of the. And that says that, okay, you have to have, for this particular provision, there is no time. And then you come back and cite a Fourth Circuit case from the following year, 1942, that says, well, because you have this general provision that talks about the need to have something temporarily filed before the commissioner files a substitute tax return, that goes the other way. But how does the general case overruled of the Fourth Circuit in 1942 overrule the specific case in 1941 that deals with this particular provision? Not the regulation, but the statute. The Fourth Circuit recognized the fact that there is a, what I call a terminal date, a drop-dead date. It is some date. It is not until the end of time. So once you've gotten to that point, then really the only question is what is that terminal date and who gets to decide it? So that they're putting a time in, even though it just says manner. They are putting a time in. The Fourth Circuit agreed. One of the statements in the Fourth Circuit that's cited in our brief says something about a timely filed return. Well, we know from the Fourth Circuit's holding that doesn't mean return filed on exactly April 15th of that date. It allows some type of extension. The only question is who gets to decide how long the extension is and how long is it? And that's the perfect example of why we have the ATHIC Treasury regulations that give what that terminal date is going to be. And that's what this whole case is about. Who gets to decide? And the Supreme Court has said the agency gets to decide that, not judges. Just to tie up one loose end, if you want to make it down, we'll give you a lot of additional time. Going through the additional national muffler factors, the second one is the regulation substantially contemporaneous with the statute. Yeah, and that doesn't matter. The latest Supreme Court cases say that does not matter. So that factor is no longer valid. Doesn't matter again. Because the Supreme Court said it doesn't matter whether it's five years, one year, or 50 years. The Supreme Court pointed out the administrative rule often changes. In that Long Island care at home, the administration of that particular rule, the rule changed. The Supreme Court said it's still entitled to deference. So that's no longer a valid factor. The fourth factor is reliance placed on the preceding regime. That is, what happened pre-1990, how matters were interpreted. The reliance factor would be important if we had a regulation that was issued retroactively. We do not have a retroactive reg. The 1990 reg was issued prospectively. All of these years were post-1990. So that factor might be relevant only in the rare instance where you had a retroactive reg. But we do not have a retroactive reg. I'll skip consistency of the commissioner's interpretation. That's some of the stuff we've been talking about. The last one is scrutiny Congress has given to reenactments of the statute. Has Congress reenacted the statute at any time since 1990? Congress reenacts, issues new tax laws all the time. The legislative reenactment... Has 882 been amended since 1990? I believe it has, but not in any significant form. And again, the legislative reenactment doctrine only applies if you know that Congress has looked at it and approved it. Congress doesn't look at every Treasury reg before it reenacts provisions of the Internal Revenue Code. And certainly, the legislative reenactment doctrine is one of the weakest reeds on which the tax court majority rested its holding. Thank you very much. Thank you. Mr. Gelsman. Hey, Linda. Linda. May it please the Court, Phil Gelsman, Lucy Forward, Hamilton and Scripps, on behalf of the appellee, swallows holding. What? What? The swallows filed a tax return in 1992? Yes. Yes, sir, it did. And why didn't it file from 1993 to 1999? It filed in 1992 in order to make an election to be taxed on a net income basis and also to elect to be taxed as a domestic corporation for purposes of Section 897I of the Code. So essentially, it filed a return in order to make some elections in the initial year that it was conducting business in the United States. So it filed a return... You knew the regulation was in effect, so you obviously could not have relied on the pre-1990 interpretations, could you? No, you could not rely on the pre-1990 interpretations. Well, the new regulation was in effect in 1990, and we've had the discussion. We have the decision of the 15 tax court judges on whether or not that regulation was valid or not. But it did not file a return and did file a return late voluntarily without any contact from the Internal Revenue Service, even though that return wasn't timely. And the IRS has audited those returns and determined they are true and accurate. Let me ask you a question, if I might, about the word manner. What is it about the word manner that makes your client say, that's a thoroughly unambiguous word? Well, I think if you look at the Board of Tax Appeals opinion in Anglo-American Direct Trading Key, you have an analysis of the word manner. And there the court carefully goes through and distinguishes the difference between time and manner and speaks to the fact that manner talks about mode, style, how you do something, not when you do something. Well, Mr. Jelsman, doesn't that lengthy analysis make the point that the word manner is open to some discussion and interpretation? I mean, if it were self-evident and unambiguous what it meant, why would you have to have a tax case from the 30s go into that in some detail to figure it out? Well, I think the court carefully looked at the construction of the Internal Revenue Code, and we're now going back now to 1918, but carefully looked at the construction of the Internal Revenue Code and saw separate sections, as you still have separate sections today, dealing with how you file a return, where you file a return, and when you file a return. And if Congress had intended to take away deductions, why wouldn't that language be in 6072C, which talks about when a foreign corporation has to file a return? So in asking that question, I guess, well, maybe that is a response to my question. It occurs to me that the series of cases that the majority went through indicates that there's been some back and forth over the years about what manner means, and I'm interested in your client's position about how any word that can require that much discussion can really be called unambiguous. Well, Your Honor, I do believe it's unambiguous, and I think when you look at the cases that the government has prevailed, Taylor Securities, Blineheim, Jorday Enterprises, what you're seeing in those cases is the court saying there's a cutoff, there's a terminal point, there's an event after which, not a time, but an event after which the taxpayer can no longer file a return. Can't wait and see what has the government found in preparing a substitute return, and is my real return, my actual return, somehow better than that. But it's an event. It's an action by the commissioner of filing a substitute return, and at that point in time, the Fourth Circuit and the Board of Tax Appeals concluded, and the tax court in Espinoza concluded, the taxpayer loses the ability to file a return and get the benefit of its deductions. Is that beside the point? I mean, if the point here is, as your opponent says, maybe you disagree with your opponent on this, that the question being put to us on this appeal is who gets to decide what manner means. Does the language of the Fourth Circuit or the tax, previous tax board decisions make any difference, particularly in light of Brandeis? Absolutely, Your Honor, because the answer is manner has been defined. The courts have told us what manner means, and the courts have also told us there's no time requirement, neither to the predecessor to 882 or in the current 882. That analysis has... I'm sorry to interrupt, but here's the question I'm trying to ask, perhaps inartfully. Your opponent puts before us Brandeis and says, Brandeis tells you judges of the Third Circuit. That doesn't make any difference what the judges said before. What matters is if there's an ambiguous term in a statute and the agency responsible for dealing with that statute says this is what it means, that's what you live with. You've got black robes, but that doesn't buy anything if it's an ambiguous term. You live with what the agency says. Now, help me understand what's wrong with that analysis. Maybe it's a wrong look at Brandeis, maybe there's some other flaw in that logic, but that's the logical flow. I took it from your opponent's briefing yard in here today. Well, I do think it's an incorrect summary of Brandeis because I think Brandeis is a post-meet case looking at a particular provision in terms of regulation of broadband industry and the Supreme Court concluding that the FCC is the one best situated, not the Ninth Circuit in the AT&T v. Portman case to make that call. But Meade requires a statute-by-statute, agency-by-agency analysis. And ultimately, to me, what's important in Brandeis is Justice Scalia's dissent where he predicts that if the court were to issue an opinion that an agency like the IRS wouldn't like, the agency would promulgate an interpretive regulation, an interpretive rule, reversing the decision of the Supreme Court and argue for Chevron deference. And as Justice Scalia points out, that's not constitutional there, and it's not constitutional here. We're not bound by dissent. I understand that. But he predicts this exact fact pattern that went on in this case. Yeah, and he's still in dissent. He's still in dissent, but he points out that ultimately what's being suggested here is who makes the law. And the agency is saying that the federal courts sit in an advisory position, an advisory role. They issue opinions. It's up to the administrator to decide which of those opinions it decides to enforce and which of those opinions it decides to promulgate regulations, perhaps modifying or changing, which is exactly what this regulation does. It modifies or changes the results. It's a good policy argument, Mr. Sheldon, but it's the dissent. Brandeis, as you just said, said, hey, Ninth Circuit may not like what the FCC said, but that's it. So why should the commissioner, the secretary, have any less responsiveness from our court with respect to Treasury regulations than the Supreme Court said that the Ninth Circuit had to be given to the FCC with respect to communications regulations? Well, again, post-Mead, we need to look at each agency and each statute that we're interpreting and deciding what the level of deference is. But this agency gets less? I think this agency gets less because I think the Supreme Court has spoken specifically to the level of deference that goes to this agency, and that's national muffler. As you pointed out, post-Chevron, where do we see the Supreme Court asserting or allowing the Treasury Department to get Chevron deference? We see in Cottage Savings, Centennial Savings in 1991... But you're not saying Chevron doesn't apply to the IRS, to you at all? I think the court has set a standard under national muffler in terms of viewing IRS regulations. And I see nothing in Mead, Brandeis, Long Island Care that reverses the Supreme Court on its application of national muffler. And we see the court continuing to apply national muffler. So it's different. The Treasury is different somehow in a qualitative way that makes Brandeis non-applicable. And just because the Supreme Court happened to decide a case in 1979 that dealt with the commission? Not only decided it, but continues to apply it. Post-Chevron. And does not provide anywhere that national muffler no longer applies to IRS. Has the Supreme Court ever said that Chevron is not applicable to the commission regulations? No, the Supreme Court has not said that Chevron is not applicable. Has Chevron been applied? In the Boyle case, there's footnote 4, where the court concludes that the IRS regulation is consistent with congressional intent. Now here you have the tax court essentially going the exact opposite and saying that the statute's unambiguous. Congressional intent is evidenced by the statute. And the IRS has had, really since 1918, if it wants Congress to include manner and time in Section 882, it's had 90 years to be able to do that and yet has not been able to accomplish it. But at some point in time, 1990, the commissioner comes out and says that we're going to have to pick a time and here's the time we pick. Which is 18 months, when you add it up, I guess practically it's about 23 1⁄2 months, 24 months, 5 1⁄2 months after your fiscal year's over, you file a return. So that's, who are we to say that that's arbitrary and capricious? Well, I think even the commissioner would concede it's arbitrary because there's no support for the 18 months. There's nothing in the legislative history. There's nothing in the preamble to the regulations. If you were a legislator, or you were able, if you had the authority given to you to pick a time, what would you pick? I would pick a time that's consistent with the prior cases that have interpreted the statute. I.e. no time? I.e. no time. The preparation of a substitute return or worst case, contact by the Internal Revenue Service. How does that square with what the dissenters were arguing about, that that can't possibly be the intent of the statute? No rational legislator would have made tax payment optional. You know, file it whenever. Your Honor, everyone in this room can file a tax return from 20 years ago and get the benefit of those deductions. There's no time cutoff that applies to any other taxpayer, and the tax court notes that in the opinion. There's no legislative provision that takes the way of the benefit of deductions that are otherwise allowable because of a late filing. But we're people in this country, for the most part, earning money in this country, leaving trails, W-2s, and various other indications of our income, whereas a foreign corporation is not leaving the trails that we leave, and to figure out what they're doing and to create a substitute return is a much more difficult situation with a foreign corporation than with the other taxpayers. And so isn't that a reason to have a difference? Well, in some respects, Your Honor, I think that the answer to that is it depends on the foreign corporation. Toyota, Honda, Nissan, these are all foreign corporations. Don't they file their returns on time? Swallows Holdings owns a piece of real property. It qualifies to do business in California. It acquires insurance in California. It has a bank account in California. Is it that much more difficult than a California corporation? Someone pointed out to me there's 440 registered corporations or LLCs in an office right over here in Wilmington, Delaware. Are we that much harder to find than the 444,000 that are in that office? Well, the IRS seems to think so. Well, the IRS seems to think so, but look at the trial record to see what empirical evidence or support there is for that kind of statement, that foreign corporations are either less likely to file returns, less likely to pay their taxes, less likely to comply with U.S. law than domestic corporations. There's simply no support for that. Aren't you inviting us to do exactly what the Supreme Court has told us not to do, which is to make policy judgments about what is and isn't sensible for the tax-collecting authorities of this country to do in figuring out who to make do what when? I mean, by inviting us to look at the trial record and say, gee, does it make sense? Doesn't it make sense for this to happen? Doesn't that put us in exactly the spot the Supreme Court has said in Chevron and Brand X the regulatory agency is supposed to be in? But ultimately what you have here is you have a regulatory agency who can't support or can't win its position in the court and ultimately decides, rather than trying to continue to litigate it, what we'll do is we'll promulgate a regulation to put forth our position. So we'll sidestep the judicial system and essentially put forth a regulation which gives us control over whether or not a late filed return in this instance is entitled to deductions. And essentially, you know, this is a forfeiture provision. This says those deductions may have been paid, they may have been allowable, but it's up to the commissioner to decide whether or not we're going to give you the ability and the benefit of those deductions even though the prior case has held that there was no time requirement in the predecessor or the current version of Section 882. But 882 is silent, is it not, with regard to time? It is silent as to time. It speaks of manner. It speaks of how you file a return. So then how can we say it's capricious for the commissioner to say if you, the foreign entity, wanting to take advantage of a benefit of American tax laws, need to file within X period of time? That's done all the time by the government. And you're, in effect, asking us to come in and interfere with that, throw it out, and say, nope, that's not it, can't do it. Well, I think my point, Your Honor, is there is no other taxpayer other than foreign corporations and non-resident aliens that suffers the loss of deductions because they don't file a return timely. This provision, what has been referred to as a draconian provision, only applies to foreign corporations and non-resident aliens. Anyone and everyone else, domestic corporations, partnerships, LLCs, sole proprietorships, individuals, trusts, non-profit corporations, all get the benefit of their deductions whether they file the return timely or whether they don't file it timely. This is the only place where the commissioner has decided that this group, this category, loses the benefit of their deductions. And why should we, as a matter of, in effect, just arguing policy, agree with what you said? Because the prior decisions of the tax, of the Board of Tax Appeals and the Fourth Circuit Court of Appeals concluded that there was no time requirement in the statute. Pre-1990. Pre-1990, that's correct. But now we're post-1990, your client having, I mean, your client really is not in a great position. You've got the Regulation 90, you've got the fact where we started. You file a return in 92, and then for 6, 7 years you don't file a return. Unfortunately, the client thought since they didn't make money, they didn't have any net income, they didn't need to file a return. And unfortunately, the CPA realized that 3 to 4 years after that. Anything further you want to add? I guess the, kind of just the final point, when you apply the regulation, the 1990 regulation, to the fact patterns of the 4 cases decided by the Board of Tax Appeals and the Fourth Circuit Court of Appeals, you apply the fact pattern to the regulations, what you see is in every instance that the taxpayer won, the government would have won under that particular fact pattern. And ultimately, I think that's the point in some respects of the tax court. That the Secretary has gone back and changed the rules and is in essence, arguing we get to change the result as well. But that rule was changed 17 years ago. Rule was changed 17 years ago. And so there's plenty of notice for accountants or foreign corporations filing returns to know what they need to do to get their deduction. It's not like something was a deduction that they could not have been aware of if they were aware of the statute and the regs. But correspondingly, as Judge Allero points out, the government was aware of the tax court position in 1938 and waited effectively 50 years to decide to make an effort to reverse the Board of Tax Appeals. It had plenty of notice as well. Thank you very much. I just have a couple of brief comments. If the statute had said had used the words both time and manner back when it was originally promulgated back in the 1920's that would actually be a worse situation for the taxpayer because the statute said in the time and in the manner, you could only claim deductions if you filed a return by its due date. Because the statute uses the word manner that actually gives the prior judicial precedence and the current reg give the foreign taxpayer more time up to almost two years to file a return and still claim the deductions. And the situation that IRS faced again way back when and even now when you have non-resident individuals or foreign taxpayers, you have the foreign individual coming in just to do the one boxing match in Miami and then leaving, IRS takes 30% right off the top, no deductions. If you want deductions you've got to file your return by within the 18 months. So in some respects I just want to point out that it is taxpayer favorable that the word manner is ambiguous because under current regime it actually allows the taxpayer more time than the foreign taxpayer in which to claim deductions. That's our case unless the court has more questions for me. Thank you. Thank you to both counsel for a well presented case. We'll take it under advisement. Make a good moot court question. While we're on that, by the way, are there any students here from Widener University School of Law? Welcome. I understand that there are some of you have reviewed a number of the cases we have sitting today, tomorrow and Thursday. I wasn't sure who was here today. Welcome. Next case.